JMS:DR/JOE
F. #2019R01386

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

      - against -                           Docket No. 22-CR-194 (EK)

ANTHONY ROMANELLO et al.,

      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - -X

MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT ANTHONY ROMANELLO'S MOTIONS TO DISMISS AND SEVER

                                        BREON PEACE
                                        UNITED STATES ATTORNEY
                                        Eastern District of New York
                                        271 Cadman Plaza East
                                        Brooklyn, New York 11201

James P. McDonald
Dana Rehnquist
John O. Enright
Assistant U.S. Attorneys
    (Of Counsel)

**Table of Contents**

ARGUMENT ................................................................................................................................. 1

    I.     There Was No Preindictment Delay and Therefore the Indictment Should Not Be Dismissed ......................................................................................................................... 1

    II.    The Defendant's Motion to Dismiss the Indictment Because of Prosecutorial Vindictiveness Should Be Denied ................................................................................... 4

    III.   The Indictment States Violations of 18 U.S.C. § 894(a)(1) ......................................... 6

    IV.   Bexheti's Purported Testimony Does Not Warrant Severance ................................... 8

CONCLUSION ............................................................................................................................ 12


## Table of Authorities

**Cases**

Bordenkircher v. Hayes,
    434 U.S. 357 (1978) ............................................................................................... 5

Hamling v. United States,
    418 U.S. 87 (1974) ................................................................................................. 7

Mooney v. Holohan,
    294 U.S. 103 (1935) ............................................................................................... 2

United States v. Aparo,
    221 F. Supp. 2d 359 (E.D.N.Y. 2002) ................................................................. 10

United States v. Armstrong,
    517 U.S. 456 (1996) ............................................................................................... 5

United States v. Ashley,
    905 F. Supp. 1146 (E.D.N.Y. 1995) .................................................................... 11

United States v. Attanasio,
    870 F.2d 809 n.3 (2d Cir. 1989) ....................................................................... 9-10

United States v. Avenatti,
    433 F. Supp. 3d 552 (S.D.N.Y. 2020) ................................................................ 5-6

United States v. Birney,
    686 F.2d 102 (2d Cir. 1982) ................................................................................. 3

United States v. Castellano,
    610 F. Supp. 1359 (S.D.N.Y. 1985) ..................................................................... 3

United States v. Cornielle,
    171 F.3d 748 (2d Cir. 1999) ................................................................................. 2

United States v. Ewell,
    383 U.S. 116 (1966) ............................................................................................... 2

United States v. Finkelstein,
    526 F.2d 517 (2d. Cir. 1975) ................................................................................ 9

United States v. Frias,
    521 F.3d 229 (2d Cir. 2008) ............................................................................. 7-8

United States v. Gardell,

2001 WL 1135948 (S.D.N.Y. Sept. 25, 2001).................................................................. 10

United States v. Girard,
 601 F.2d 69 (2d Cir. 1979).............................................................................................. 11

United States v. Johnson,
 171 F.3d 139 (2d Cir. 1999).......................................................................................... 5-6

United States v. King,
 126 F.3d 394 (2d Cir. 1997).............................................................................................. 5

United States v. Lanza,
 790 F.2d 1015 (2d Cir. 1986)........................................................................................ 10

United States v. Lovasco,
 431 U.S. 783 (1977)....................................................................................................... 2-3

United States v. Marion,
 404 U.S. 307 (1971)........................................................................................................... 2

United States v. Panza,
 750 F.2d 1141 (2d Cir. 1984)........................................................................................ 10

United States v. Pirro,
 76 F. Supp. 2d 478 (S.D.N.Y. 1999)............................................................................. 11

United States v. Rubin,
 609 F.2d 51 (2d Cir. 1979)............................................................................................... 2

United States v. Sanders,
 211 F.3d 711 (2d Cir. 2000)............................................................................................. 5

United States v. Scala,
 388 F. Supp. 2d 396 (S.D.N.Y. 2005)......................................................................... 2, 4

United States v. Schlegel,
 2009 WL 3837305 (E.D.N.Y. Nov. 16, 2009)............................................................ 11

United States v. Siegel,
 717 F.2d 9 (2d Cir. 1983) ................................................................................................. 9

United States v. Wilson,
 11 F.3d 346 (2d Cir. 1993)............................................................................................... 9

Wayte v. United States,
 470 U.S. 598 (1985)........................................................................................................... 5

**Statutes**

18 U.S.C. § 3282...................................................................................................................... 2

18 U.S.C. § 894(a) ............................................................................................................... 1, 7

**Rules**

Fed. R. Crim. P. 12(b)(3)(B)....................................................................................................... 7

The Government respectfully submits this memorandum of law in opposition to the defendant Anthony Romanello's motion for omnibus relief (the "Defendant's Motion"). On April 29, 2022, a grand jury sitting in the Eastern District of New York returned an indictment charging Anthony Romanello, along with co-defendants Luan Bexheti and Joseph Celso, with extortionate collection of credit and conspiracy to commit the same, in violation of Title 18, United States Codes, Section 894(a) (the "Indictment").[1] The charged conducts relates to the defendants' involvement in a conspiracy from March 2017 through June 2017 in which the Defendant and others agreed to use, and did use, extortionate means to collect one or more extensions of credit from two victims. First, the Defendant moves to dismiss the Indictment on multiple grounds, including preindictment delay, prosecutorial vindictiveness and failure to state an offense. Second, the Defendant moves to sever his case from that of his co-defendant Lujan Bexheti. For the reasons set forth below, the Defendant's Motion relies on unsupported factual allegations and is contrary to relevant precedent and thus should be denied in its entirety.

ARGUMENT

I.  There Was No Preindictment Delay and Therefore the Indictment Should Not Be Dismissed

The Defendant first argues the Indictment should be dismissed because his due process rights were purportedly violated since the "government waited until almost five years had passed" to indict. ECF Dkt. No. 48 at 2. In support of this argument, the Defendant asserts only speculative allegations rather than grounded facts. Because the Defendant has not—and cannot—show that he has suffered actual and substantial prejudice as a result of preindictment

---

[1] Celso was also charged with one count of witness intimidation, in violation of Title 18, United States Code, Section 1512(c).

delay or that the government intentionally caused the delay to gain a tactical advantage, the Defendant's motion should be denied.

It is a settled principle that the applicable statute of limitations is the "'primary guarantee against bringing overly stale criminal charges.'" United States v. Marion, 404 U.S. 307, 322 (1971) (quoting United States v. Ewell, 383 U.S. 116, 122 (1966)). When an indictment is brought within the applicable statute of limitations period it is considered presumptively timely and is "only rarely dismissed." United States v. Cornielle, 171 F.3d 748, 752 (2d Cir. 1999). Here, it is undisputed that the Indictment was filed within the statutory limitations period—the Indictment was returned within five years of the charged conspiracy. See 18 U.S.C. § 3282; ECF Dkt. No. 47 at 1 (defendant conceding the Indictment was timely filed). As such, the indictment is entitled to "a strong presumption of validity." Id.

To make out a due process violation based on preindictment delay, a defendant must show that allowing the case to proceed would violate "'fundamental conceptions of justice.'" United States v. Lovasco, 431 U.S. 783, 790 (1977) (quoting Mooney v. Holohan, 294 U.S. 103, 112 (1935)). A defendant can achieve this only by showing that (1) the preindictment delay caused actual and substantial prejudice, and (2) the delay was a purposeful tactic to gain a strategic advantage over the defendant. See Marion, 404 U.S. at 324. The defendant bears a "heavy burden" to prove he suffered "actual prejudice because of the alleged pre-indictment delay *and* that such delay was a course intentionally pursued by the government for an improper purpose." United States v. Scala, 388 F. Supp. 2d 396, 399 (S.D.N.Y. 2005) (emphasis in original); United States v. Rubin, 609 F.2d 51, 66 (2d Cir. 1979), aff'd, 449 U.S. 424 (1981). The burden of proving actual prejudice is on the defendant, and the proof of prejudice must be definite and not speculative. United States v. Birney, 686 F.2d 102, 105-06 (2d Cir. 1982).

Here, the Defendant cannot meet his heavy burden. First, there is nothing inherently untimely about the government's filing. See United States v. Castellano, 610 F. Supp. 1359, 1385 (S.D.N.Y. 1985) (collecting cases and noting that courts have "refused to infer prejudice from delays" ranging from five to nineteen-and-a-half years). The government is under no obligation to file charges as soon as probable cause exists to charge a defendant or even immediately after assembling evidence sufficient to establish a suspect's guilt beyond a reasonable doubt. See Lovasco, 431 U.S. at 791-93. Indeed, prosecution of a defendant following a period of investigative delay is permissible even "if his defense might have been somewhat prejudiced by the lapse of time." Id. at 796.

To support the claim of actual prejudice, the Defendant argues that one witness recently died and *some* eyewitness are no longer employed at their former place of work. See ECF Dkt. No. 48 at 3. However, Courts have found that neither "the death or absence of potential witnesses [n]or the loss of documentary evidence [is] sufficient to establish actual prejudice." Castellano, 610 F. Supp. at 1385. Any implied concern that the defendant will not be able to interview or confront witnesses is assuaged, in any event, by the presence and availability of other eyewitnesses—a point omitted from the Defendant's Motion. Nor has the Defendant identified any witnesses that they have been unable to contact, the Defendant only makes conclusory statements that eyewitnesses "are no longer employed" at Club A restaurant. Thus, the defendant has not established any prejudice.

Next, the Defendant argues that he has been prejudiced by the delay because the Defendant has aged since the crime and his own ability to prepare and possibly testify at trial could be diminished. ECF Dkt. No. 48 at 3. Such assertions fall short of the definite and non-speculative evidence required to support a finding of prejudice. See Birney, 686 F.2d at 105-06.

3

Indeed, the Defendant has not indicated that testifying and preparing for trial are physical impossibilities, or that they could not be addressed with a remedy short of dismissal, such as a trial calendar that is mindful of any provable limitations the defendant may have. Because the Defendant cannot provide definite, non-speculative evidence of substantial prejudice, his motion should be denied.[2]

Even if the Defendant could somehow demonstrate actual prejudice—which he cannot—he has failed to meet his burden of demonstrating that the government intentionally delayed the prosecution to gain a tactical advantage. The Defendant claims the delay was based on the government's alleged desire to bring additional charges against him. ECF Dkt. No. 48 at 2-3. This allegation is speculative, unsupported by the record and fails to meet the "heavy burden" needed to demonstrate that the delay was for "an improper purpose." Scala, 388 F. Supp. 2d at 399 (internal quotation marks omitted). Because the Defendant fails to establish a due process violation based on preindictment delay, the Defendant's Motion to dismiss the Indictment on this ground should be denied.

II. The Defendant's Motion to Dismiss the Indictment Because of Prosecutorial Vindictiveness Should Be Denied

Defendant's Motion next moves for dismissal of the Indictment based on alleged prosecutorial vindictiveness. Specifically, he claims he was indicted because of his refusal to cooperate with the government in 2010 and "because he's a gambler, but mostly because he's Italian." ECF Dkt. No. 48 at 5. These factual assertions are untrue and his application of the law is erroneous.

---

[2] To the extent that Defendant alleges he has experienced preindictment delay in previous prosecutions, such evidence is immaterial to the question of whether he has suffered prejudice in this case.

As a threshold matter, the Second Circuit adheres to the principle that the presumption of prosecutorial vindictiveness "does not exist in a pretrial setting." United States v. Avenatti, 433 F. Supp. 3d 552, 563 (S.D.N.Y. 2020) (internal quotations omitted). Accordingly, the Defendant's pretrial claim of presumptive vindictiveness can and should be dismissed out of hand. Even continuing through the analysis, though, the Defendant's Motion is not tenable.

As a general rule, United States Attorneys are given "'broad discretion' to enforce the Nation's criminal laws." United States v. Armstrong, 517 U.S. 456, 464 (1996) (quoting Wayte v. United States, 470 U.S. 598, 607 (1985)). Accordingly, in the absence of clear evidence to the contrary, "a prosecutor's pretrial charging decision is presumed legitimate." United States v. Sanders, 211 F.3d 711, 716 (2d Cir. 2000); see also Armstrong, 517 U.S. at 464. Nonetheless, a prosecutor may not use his or her power to punish someone for doing what the law allows them to do. See Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978). Such conduct constitutes a constitutional violation of due process. Id. Thus, an indictment should be dismissed "if there is a finding of 'actual' vindictiveness, or if there is a presumption of vindictiveness that has not been rebutted by objective evidence justifying the prosecutor's action." United States v. Johnson, 171 F.3d 139, 140 (2d Cir. 1999) (quoting United States v. King, 126 F.3d 394, 397 (2d Cir. 1997)).

To prevail on a claim of actual vindictiveness, a defendant must show that "(1) the prosecutor harbored genuine animus toward the defendant, or was prevailed upon to bring the charges by another with animus such that the prosecutor could be considered a 'stalking horse,' and (2) [he] would not have been prosecuted except for the animus." Avenatti, 433 F. Supp. 3d at 562 (internal quotations omitted). To establish actual vindictiveness, a defendant must

5

provide direct evidence, such as a prosecutor's statement revealing the vindictive intent. See id. at 562-63.

Here, the Defendant claims that the government has filed the instant case in an act of prosecutorial vindictiveness stemming from the Defendant's refusal to previously cooperate with the government. Specifically, the Defendant alleges that in July 2010, two agents from the Federal Bureau of Investigation ("FBI") told the Defendant that he would be arrested on an "old gambling charge" if he refused to become a cooperating witness for the government. ECF Dkt. No. 48 at 4. The Defendant alleges that he was subsequently indicted in this case because of his refusal to cooperate with the government over twelve years ago. See id. The defendant's self-serving statements are otherwise unsubstantiated.

Even if accepted as true, the facts alleged by the defendant do not support a finding of prosecutorial vindictiveness. The Defendant's suspicion that he was retaliated against for refusing to cooperate does not constitute direct evidence of the prosecutor's allegedly vindictive motive in bringing the current charges. As the case law makes clear, such damning evidence is available only in rare cases, Johnson, 171 F.3d at 140, and this is not one of those cases. To be sure, the Defendant was not charged because of any animus or vindictiveness held by the prosecutor; he was charged because a grand jury determined there was probable cause to believe that he used extortionate means to collect an extension of credit. As such, the Defendant's motion to dismiss the Indictment based on prosecutorial vindictiveness should be denied.

III. The Indictment States Violations of 18 U.S.C. § 894(a)(1)

The Defendant next argues that "Romanello arguably committed misdemeanor assault (under New York State Penal Law) while attempting to help a friend collect a gambling

6

debt in which Romanello had no interest. . . . that cannot be extortion/loansharking and the indictment must be dismissed." ECF Dkt. No. 48 at 6.[3] Once again, the Defendant's Motion fails since the Indictment clearly establishes the elements of a federal crime.

A defendant may move to dismiss an indictment based on its "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B). "Typically, to state an offense, an indictment need only track the language of the statute and, if necessary to apprise the defendant of the nature of the accusation against him, state time and place in approximate terms." United States v. Frias, 521 F.3d 229, 235 (2d Cir. 2008) (internal quotation marks omitted); see also Hamling v. United States, 418 U.S. 87, 117 (1974) ("It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offen[s]e intended to be punished." (internal quotation marks omitted)).

Here, the relevant statute prohibits a defendant from "knowingly participat[ing] in any way, or conspir[ing] to do so, in the use of any extortionate means . . . to collect or attempt to collect any extension of credit." 18 U.S.C. § 894(a)(1). The Indictment, in Counts One and Two, tracks the language of the statute and states the relevant place and time of the offense conduct. Count One alleges as follows:

> In or about and between March 2017 and June 2017, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANTHONY ROMANELLO, also known as "Rom," LUAN BEXHETI, also known as "Lou," and JOSEPH CELSO, together with

---

[3] Defendant's reliance on United States v. Pacione, 738 F.2d 567 (2d Cir. 1984) in support of his argument that the Indictment should be dismissed, see ECF Dkt. No. 48 at 5-6, is misplaced. The Second Circuit held in Pacione that in passing the federal loansharking statute Congress was concerned with "the use of actual and threatened violence by members of organized crime engaged in loan sharking." Id. at 572. As the Defendant concedes, he "arguably committed misdemeanor assault" in connection with the collection of a debt—an act of violence that, under Pacione, Congress intended the instant statute to address.

7

> others, did knowingly and intentionally agree to participate in the use of extortionate means to collect one or more extensions of credit from John Doe #1 and John Doe #2, individuals whose identities are known to the Grand Jury.

Count Two alleges as follows:

> In or about and between March 2017 and June 2017, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANTHONY ROMANELLO, also known as "Rom," LUAN BEXHETI, also known as "Lou," and JOSEPH CELSO, together with others, did knowingly and intentionally participate in the use of extortionate means to collect and attempt to collect one or more extensions of credit from John Doe #1 and John Doe #2.

Without question, the Indictment "track[s] the language of the statute" and advises the defendant of the nature of the charge. Even beyond that, the Indictment provides a narrow and specific date range during which the alleged offense occurred; names with specificity the defendant's alleged co-conspirators in the offenses; and indicates that there were at least two victims of those offenses. Because the Indictment more than adequately states the offenses with which the Defendant is charged, the Court should deny his cursory claim that the Indictment has failed to allege a federal violation of law. Frias, 521 F.3d at 235.

### IV. Bexheti's Purported Testimony Does Not Warrant Severance

Finally, the Defendant contends that severance is warranted because a joint trial would deny him the opportunity to have his co-defendant Luan Bexheti provide exculpatory testimony on his behalf. The Court should reject this argument because the Defendant cannot satisfy the multi-factor test adopted by the Second Circuit for determining whether severance is appropriate when, as in this case, a defendant claims that his co-defendant will provide exculpatory testimony at a severed trial.

The Second Circuit has held that the following factors should be weighed in deciding whether to sever a trial on this basis: "'(1) the sufficiency of the showing that the co-

8

defendant would testify at a severed trial and waive his Fifth Amendment privilege; (2) the degree to which the exculpatory testimony would be cumulative; (3) the counter arguments of judicial economy; and (4) the likelihood that the testimony would be subject to substantial, damaging, impeachment.'" United States v. Wilson, 11 F.3d 346, 354 (2d Cir. 1993) (quoting United States v. Finkelstein, 526 F.2d 517, 523-24 (2d. Cir. 1975)). Because each of these factors weighs heavily against severance, the Defendant's Motion to sever should also be denied.

       The first Finkelstein factor is not satisfied when, as in this case, a defendant has failed to show that his co-defendant would in fact agree to testify at a separate trial. See United States v. Siegel, 717 F.2d 9, 22 (2d Cir. 1983). Here, the Defendant has advanced only a hypothetical scenario by which Bexheti would testify without offering any evidence that Bexheti would in fact take the stand, waive his Fifth Amendment privilege and offer exculpatory testimony on the Defendant's behalf if severance were granted. See ECF Dkt. No. 48 at 7. Absent any such evidence, the first Finkelstein factor strongly weighs against severance. Finkelstein, 526 F.2d at 524.

       The second and fourth Finkelstein factors—the degree to which the exculpatory testimony would be cumulative and the likelihood that the testimony would be subject to impeachment—also weigh against severance. Here, the Defendant indicates that Bexheti would testify, among other things, that "Romanello was not involved in Regan's gambling ring and all the money involved was Regan's." ECF Dkt. No. 48 at 7.

       Courts in this Circuit have required more than mere conclusory statements to support a defendant's claim that a co-defendant would offer exculpatory testimony in a severed trial. See, e.g., United States v. Attanasio, 870 F.2d 809, 815 n.3 (2d Cir. 1989) (affirming denial of severance motion and noting that "[t]he district court properly noted the insufficiency of the

9

affidavit submitted in support of the motion for severance in that it contained only conclusory statements as to the exculpatory nature of [co-defendant's] testimony" (internal quotation marks and citations omitted) (brackets in original)); United States v. Gardell, 2001 WL 1135948, at *9 (S.D.N.Y. Sept. 25, 2001) (requiring "a factual showing that demonstrates with a modest degree of definiteness the exculpatory nature and effect of the co-defendant's testimony" (citations omitted)). The exculpatory testimony proffered by the Defendant is conclusory and because it lacks any detail as to what Bexheti's testimony would actually be, no assessment can be made as to the degree to which it (if true) would be cumulative. Attanasio, 870 F.2d at 815 n.3. As a result, the second Finkelstein factor weighs against severance.

The Defendant's failure to offer anything more than a conclusory statement concerning Bexheti's expected testimony also makes it impossible to determine the likelihood that the testimony would be subject to substantial, damaging, impeachment. To be sure, the government believes that it would be able to offer substantial evidence of the Defendant's and Bexheti's guilt, but without a detailed proffer of Bexheti's expected testimony it is difficult to predict exactly how his testimony would be impeached. As such, the fourth Finkelstein factor also weighs against severance. See United States v. Aparo, 221 F. Supp. 2d 359, 365 (E.D.N.Y. 2002).

Finally, the third Finkelstein factor—judicial economy—also strongly weighs against severance. Even assuming that the Defendant is somehow prejudiced by joinder, which he is not, the chief consideration under Rule 14 of the Federal Rules of Criminal Procedure is whether that prejudice "is sufficiently severe to outweigh the judicial economy that would be realized by avoiding lengthy multiple trials." United States v. Lanza, 790 F.2d 1015, 1019 (2d Cir. 1986) (citing United States v. Panza, 750 F.2d 1141, 1149 (2d Cir. 1984)). The presumption

in favor of a joint trial is especially compelling where the crimes charged, as they are here, involve a common scheme. United States v. Girard, 601 F.2d 69, 72 (2d Cir. 1979); United States v. Pirro, 76 F. Supp. 2d 478, 483 (S.D.N.Y. 1999) (collecting numerous cases indicating that there is a strong public interest in joint trials where, as here, the defendants are both charged in the same conspiracy). At separate trials, the government would be required to introduce nearly identical evidence and testimony from the same witnesses, the same video footage, the same recorded conversations and the same documents. Under these circumstances, severance would be extremely burdensome and would needlessly disadvantage the public, the Court, and the government with complex and repetitive trials. Any potential prejudice that would be suffered by the Defendant as a result of a joint trial is thus far outweighed by the inefficiency of separate trials. See United States v. Ashley, 905 F. Supp. 1146, 1166 (E.D.N.Y. 1995) (where defendant requested severance so that co-defendant could testify at the severed trial, the request was denied in part because it would require substantial duplication of proof); United States v. Schlegel, 2009 WL 3837305, at * 2 (E.D.N.Y. Nov. 16, 2009) (reasoning that severance was inappropriate where it would require the government to call the same witnesses, present the same testimony and essentially preview its evidence).

CONCLUSION

For the reasons set forth above, the Court should deny the Defendant's Motion in its entirety.

Dated:    Brooklyn, New York
          February 3, 2023

                                            Respectfully submitted,

                                            BREON PEACE
                                            UNITED STATES ATTORNEY
                                            Eastern District of New York
                                            Attorney for Plaintiff
                                            271 Cadman Plaza East
                                            Brooklyn, New York 11201

                    By:    /s/_____
                            James P. McDonald
                            Dana Rehnquist
                            John O. Enright
                            Assistant United States Attorneys
                            (718) 254-7000