UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA,                :


    -against-                                         :        22 Cr. 194 (EK)


ANTHONY ROMANELLO, et al.,              :

              Defendants.                 :

-------------------------------------------------------x


**DEFENDANT ANTHONY ROMANELLO'S
MEMORANDUM OF LAW IN OPPOSITION TO
<u>THE GOVERNMENT'S MOTIONS FOR *IN LIMINE* RELIEF</u>**


Gerald J. McMahon, Esq.
*Attorney for Defendant Anthony Romanello*
11 Burnham Court
Scotch Plains, New Jersey 07076

# TABLE OF CONTENTS

Introduction.................................................................................................... 1

ARGUMENT.................................................................................................. 2

    A. Evidence of Out-of-Court Statements
       Of Defendants and Alleged Co-Conspirators
       Is Inadmissible...................................................................................... 3

        1. Admissions................................................................................... 3

        2. Co-Conspirator's Statements....................................................... 3

        3. Statements Against Penal Interest................................................ 6

        4. Victims' Statements..................................................................... 6

    B. Evidence of Defendants' and Co-Conspirators'
       Reputation is Not Admissible............................................................... 6

    C. Precluding Evidence of "Government's Motive".................................. 7

CONCLUSION............................................................................................... 12

# TABLE OF AUTHORITIES

Cases

*Bourjaily v. United States,* 483 U.S. 171 (1987).................................................................. 3

*Bowen v. Maynard,* 799 F.2d 593 (10th Cir. 1986)................................................................ 9

*Crane v. Kentucky,* 476 U.S. 683 (1986)..............................................................................11

*Davis v. Alaska*, 415 U.S. 308 (1974).................................................................................... 8

*Delaware v. Fensterer*, 474 U.S. 15 (1985)........................................................................... 8

*Douglas v. Alabama,* 380 U.S. 415 (1965)............................................................................ 8

*Greene v. McElroy*, 360 U.S. 474 (1959).............................................................................. 8

*Kyles v. Whitley*, 514 U.S. 419 (1995)............................................................................... 8, 9

*Lindsay v. King,* 769 F.2d 1034 (5th Cir. 1985).................................................................... 9

*Stirone v. United States*, 361 U.S. 212 (1960)...................................................................... 2

*United States v. Abel*, 469 U.S. 45 (1984).......................................................................... 10

*United States v. Basciano*, No. 03 Cr. 929 (NGG), 2007 WL 2071862,
    at *2 (E.D.N.Y. July 17, 2007)....................................................................................... 6

*United States v. Blackwood*, 456 F.2d 526 (2d Cir. 1972)................................................. 10

*United States v. Dennis*, 625 F.2d 782 (8th Cir. 1980)......................................................... 7

*United States v. Harvey*, 547 F.2d 720 (2d Cir. 1976)....................................................... 10

*United States v. Harwood*, 998 F.2d 91 (2d Cir. 1993)....................................................... 6

*United States v. James*, 609 F.2d 36 (2d Cir. 1979).......................................................... 10

*United States v. Joseph*, 781 F.2d 549 (6th Cir. 1986)........................................................ 7

*United States v. Lester*, 248 F.2d 329 (2d Cir. 1957)........................................................ 10

*United States v. Lisyansky*, 806 F.3d 706 (2d Cir. 2015)................................................. 2

*United States v. Maldonado-Rivera*, 922 F.2d 934 (2d Cir. 1990)................................. 3

*United States v. Masino*, 275 F.2d 129 (2d Cir. 1960).................................................. 10

*United States v. Morel*, 751 F. Supp. 2d 423 (E.D.N.Y. 2010)......................................... 12

*United States v. Mucciante*, 21 F.3d 1228 (2d Cir. 1994)............................................... 2

*United States v. Natale*, 526 F.2d 1160 (2d Cir. 1975), cert. denied,
    425 U.S. 950 (1976)................................................................................................. 7

*United States v. Owens*, 484 U.S. 554 (1988)................................................................ 8

*United States v. Russo*, 302 F.3d 37 (2d Cir. 2002),
    cert. denied, 531 U.S. 1112 (2003)......................................................................... 3

*United States v. Saneaux*, 365 F. Supp. 2d 493 (S.D.N.Y. 2005).................................... 6

*United States v. Sears*, 544 F.2d 585 (2d Cir. 1976)....................................................... 7

*United States v. Tropiano*, 418 F.2d 1069 (2d Cir. 1969)............................................... 7

*United States v. Weiss*, 930 F.2d 185 (2d Cir. 1991).....................................................10

*United States v. Zimmitti*, 850 F.2d 869 (2d Cir. 1988)................................................. 7

*Williamson v. United States*, 512 U.S. 594 (1994)......................................................... 6

Other Authorities

18 U.S.C. Section 894....................................................................................................... 7

Fed. R .Evid. 104(a)...................................................................................................... 5,6

U.S. Const., Amend. V..................................................................................................... 2

U.S. Const., Amend. VI.............................................................................................. 7,8,12

3A J. Wigmore, Evidence, Section 940 (Chadbourn rev. 1970)..................................... 8

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x

UNITED STATES OF AMERICA,                  :

       -against-                               :            22 Cr. 194 (EK)

ANTHONY ROMANELLO, et al.                  :

       Defendant.                               :

----------------------------------------------------------x

## Introduction

Defendant Anthony Romanello ("defendant") submits this memorandum of law in opposition to The Government's Motions *In Limine* To Admit Certain Evidence And Preclude Certain Evidence And Arguments At Trial, October 6, 2023, ECF No. 68 ("Gov't MIL"). The government seeks to:

    a. introduce a number of out-of-court statements made by defendants and their alleged co-conspirators on the grounds that they are not hearsay, or are admissible as declarations against penal interest;

    b. introduce evidence of defendants' reputation and the reputation of (alleged) co-conspirators; and

    c. preclude the defense from presenting arguments to the jury concerning the government's conduct and motive in prosecuting this case.

The government's various motions should be denied, except as consented to herein.

## ARGUMENT

Preliminarily, without presenting evidence to a grand jury and obtaining a superseding indictment, the government attempts to amend the indictment herein by unilaterally adding a charge of "gambling-credit collection conspiracy":

> The government means to prove at trial that Romanello, Celso, Bexheti, and other uncharged co-conspirators ... including [RU], who worked with Bexheti to take and record bets and money owed, [MR], who was the boss of the gambling operation, together operated precisely such an illegal sports gambling scheme ... and individuals, including Romanello and Celso were called in to help collect on outstanding debts (the "gambling-credit collection conspiracy"). The charged extortionate collection of credit conspiracy (Count One) is part of the broader gambling-credit collection conspiracy, in which the the defendants and co-conspirators took part.

Gov't MIL, at 2-3. Until that filing a few days ago, the words "gambling-credit collection conspiracy" had never been written, spoken or otherwise uttered in any fashion in connection with this case. Now, to shoehorn evidence into the case which does not belong, the government simply pretends and claims that Romanello is also charged with "gambling-credit collection conspiracy" and, therefore, evidence related to that phantom crime can be introduced into evidence at his trial. The Fifth Amendment to the United States Constitution says otherwise. "No person shall be held to answer for a capital, or otherwise crime, unless on a presentment or indictment of a Grand Jury ..." U.S. Const., Amend. V; *Stirone v. United States*, 361 U.S. 212, 217 (1960); *United States v. Lisyansky*, 806 F.3d 706, 712 (2d Cir. 2015). "[O]nly the grand jury may lawfully amend [an[ indictment." *United States v. Mucciante*, 21 F.3d 1228, 1233 (2d Cir. 1994).

2

A. Evidence of Out-of-Court Statements of Defendants
   And Alleged Co-Conspirators Are Inadmissible

The government seeks judicial imprimatur to admit at trial certain, <u>unspecified</u>, out-of-court statements of defendants Romanello, Celso, Bexheti and purported victims as 1) admissions, 2) co-conspirator's statements, 3) declarations against penal interest, and 4) victims' statements. Most of the contemplated evidence is simply not admissible.

1. Admissions

Defendant Romanello does not contest the fact that admissions made by him are admissible against him. For the reasons set forth below, we do not agree that admissions made by co-defendant Celso are admissible against Romanello.

2. Co-Conspirator's Statements

A party seeking to introduce evidence of the statement of a co-conspirator must satisfy a two-pronged test: first, the conspiracy involved must have included both the declarant and the defendant, and second, the statement must have been made during the course of, and in furtherance of, the conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Maldonado-Rivera*, 922 F.2d 934, 958 (2d Cir. 1990). The rule is based on the principle that, since members of a conspiracy operate as agents of one another, the statements of one co-conspirator are attributable to all other co-conspirators. *United States v. Russo*, 302 F.3d 37, 45 (2d Cir. 2002), <u>cert denied</u>, 531 U.S. 1112 (2003).

The *Russo* Court explored the second prong of the test in greater depth, noting that

> [w]here evidence is offered against a defendant consisting of a declaration by an alleged co-conspirator in the furtherance of some criminal act, we

3

explained that the court in each instance must find the existence between the defendant and the declarant of <u>a specific criminal conspiracy to do that criminal act</u>."

<u>Id</u>., at 44 (citations, internal quotes, and brackets omitted) (emphasis added). Thus, the Court determined, the co-conspirator exception is inapplicable "when the speaker and the defendant were not jointly engaged in the criminal venture that was being advanced by the speaker." <u>Id</u>.

In this case, the government has no evidence that <u>Mr. Romanello</u> was involved in any extortionate collection of credit conspiracy. To remedy that shortcoming, the prosecution simply switched the conspiracy:

> As a practical matter, the government anticipates that the context in which certain of the defendants' and co-conspirator statements are offered at trial will make clear that the statements were in furtherance of the gambling-credit collection conspiracy.

Gov't MIL, at 6. Even with that sleight of hand, the government cannot make a sufficient showing that Anthony Romanello is a co-conspirator of any conspiracy in which the declarants are members for the purpose of admitting recordings under the co-conspirator exception. The clearest evidence that Mr. Romanello is not a co-conspirator are the voluntary statements made pre- and post-arrest by co-defendant Luan Bexheti to FBI agents. Bexheti, of Albanian origin, was a runner for the Michael Regan gambling organization and the conduit to the Albanian debtors ("John Doe # 2 and Individual # 1 [Gov't MIL, at 3-4]) involved in this case. Bexheti told the agents:

> Regan got Bexheti involved in the gambling operation as a way to make some money. [....] Bexheti was very close with Regan... <u>Bexheti never talked to Rom personally</u> .... The incident with Bruno's nephew, Toni, occurred when Toni and his brother-in-law [Eddie] won approximately $80,000. Later, the

4

> two lost and owed approximately $80,000. Toni and his brother-in-law did not pay back the money in over two months. When the brother-in-law had not given Bexheti the money to give Regan, Bexheti suggested they talk to Toni's uncle, Bruno. <u>Bexheti did not think anyone was going to hurt or threaten Bruno</u>, and just thought they would talk to him and have him or his nephew pay the money. [....] <u>Regan advised Bexheti when money was owed, not to threaten the gamblers</u>. [....]
> 
>    Regan arranged a sit down at Bruno's restaurant to talk to Bruno. Regan told Bexheti ahead of time that Rom would be at the sit down. <u>Bexheti knew Rom and Bruno had known each other for thirty years. Bexheti was under the impression that Rom was just coming to the sit down to show his face and ask that the money be paid back. Bexheti thought Rom was doing Regan a favor. (....) Rom was not involved in the actual gambling ring. Bexheti was under the impression all the money was Regan's.</u>

Voluntary Interview of Luan Bexheti, March 5, 2020, RBC 3896-97 (emphasis added).

      Following his arrest on May 3, 2022, Bexheti made another voluntary statement (audio-recorded) in which he confirmed that he was a runner for the Regan gambling organization, that Regan had told him never to threaten debtors who didn't pay, and to ask for Romanello's help because he (Romanello) knew Bruno. At the final meeting between Bruno and Romanello, Bruno was belligerent and insulting, telling Romanello he "didn't have the balls to punch" him. Bexheti thought the punch by Romanello was more for the disrespect than the money. Audio recording of the post-arrest interview of Luan Bexheti, May 3, 2022, RBC 3888.

      This case presents one of those rare instances where the government will be unable to meet its burden to show that Anthony Romanello was a participant with any declarant in any conspiracy. The government's proffer should, therefore, be rejected. Alternatively, the Court should resolve this preliminary question before trial under Fed. R. Evid. 104(a) or, at a

5

minimum, require the government "to elicit and place before the jury all the evidence it will rely upon to satisfy all prerequisites of admissibility" before determining whether the recordings may be introduced. *United States v. Basciano*, No. 03 Cr. 929 (NGG), 2007 WL 2071862, at *2 (E.D.N.Y. July 17, 2007); *United States v. Saneaux*, 365 F. Supp. 2d 493, 503-04 (S.D.N.Y. 2005).

### 3. Statements Against Penal Interest

In addition to the outline for this hearsay exception as described by the government in its Gov't MIL (at 11-13), it is important for the Court to note that a statement will not qualify as a declaration against penal interest unless it squarely and unequivocally implicates the declarant in criminal activity. *United States v. Harwood*, 998 F.2d 91, 98 (2d Cir. 1993). Further, the statement itself must be self-inculpatory; it is not enough that it is "made within a broader narrative that is generally self-inculpatory. " *Williamson v. United States*, 512 U.S. 594, 600-01 (1994).

### 4. Victims' Statements

The cases cited by the government deal with statements that are admissible because they were not offered for their truth. Gov't MIL, at 6 n.8. Any victims' statement to be admitted at this trial should be considered on an *ad hoc* basis.

### B. Evidence of Defendants' and Co-Conspirators' Reputation is Not Admissible

The government seeks to admit in its case-in-chief "limited evidence" of the defendants' and their co-conspirators' reputation as being members and associates of La Cosa Nostra. Gov't MIL, at 26. The prosecution's theory of admissibility is that the reputation

6

evidence "is inexorably intertwined with the crime of extortion with which the defendants are now charged." Gov't MIL, at 27 (emphasis added). Once again, the government is misstating the facts to make an argument. Defendants are not charged with extortion, a crime for which the victim's state of mind is a key issue. *United States v. Tropiano*, 418 F.2d 1069, 1081 (2d Cir. 1969); *United States v. Dennis*, 625 F.2d 782, 800 (8th Cir. 1980) (cited in Gov't MIL, at 29, 30). Conversely, in a prosecution under Section 894,

> ...it is the conduct of the defendant, not the victim's individual state of mind, to which the thrust of the statute is directed. *United States v. Natale*, 526 F.2d 1160, 1168 (2d Cir. 1975), cert. denied, 425 U.S. 950 (1976).

*United States v. Zimmitti*, 850 F.2d 869, 873 (2d Cir. 1988). See also *United States v. Sears*, 544 F.2d 585, 587 (2d Cir. 1976) ("Actual fear on the part of the victim is not an element of an offense under 18 U.S.C. Section 894."). Thus, evidence of bad reputation is properly admitted in an extortion prosecution to prove fear by the victim; it has no similar purpose in a Section 894 prosecution except to try to tarnish the defendant as a bad actor. *Zimmitti*, 850 F.2d at 873-75; *United States v. Joseph*, 781 F.2d 549, 553-54 (6th Cir. 1986).

The government also claims that "Romanello's continued demands for repayment ... make clear that the defendants intended to instill fear in the Victims to ensure repayment of the Debt." Gov't MIL, at 29. Assuming, *arguendo*, there were such continued demands by Romanello (which we deny), "importuning in order to collect does not violate Section 894(a)(1) unless the means of collection were extortionate..." *Zimmitti*, 850 F.2d at 875.

C. Precluding Evidence of "Government's Motive"

The Sixth Amendment to the Constitution guarantees the right of an accused in a

7

criminal prosecution "to be confronted with the witnesses against him." The primary interest secured by the Confrontation Clause "is the right of cross-examination." *Douglas v. Alabama*, 380 U.S. 415, 418 (1965). In our jurisprudence, cross-examination has always been

> the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, *i.e.*, discredit a witness. .... A more particular attack on the witness' credibility is effected by means of cross-examination directed towards revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is "always relevant as discrediting and affecting the weight of his testimony." 3A J. Wigmore, Evidence, § 940, p. 775 (Chadbourn rev. 1970). We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally-protected right of cross-examination. *Greene v. McElroy*, 360 U.S. 474, 496 (1959).

*Davis v. Alaska*, 415 U.S. 308, 316-17 (1974). See also *United States v. Owens*, 484 U.S. 554, 559 (1988) ("It is sufficient [to satisfy the Confrontation Clause] that the defendant has the opportunity to bring out such matters as the witness' bias..."); *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) ("[T]he right to confront one's accusers is satisfied if defense counsel receives wide latitude at trial to question witnesses.").

If there were any doubt about the right of a defendant to cast aspersions on the propriety of a prosecution's case, they were unmistakably dispelled by the United States Supreme Court in *Kyles v. Whitley*, 514 U.S. 419 (1995). In reversing the conviction because the prosecution withheld evidence that could have been used on cross-examination to cast doubt on the *bona fides* of the government case, the Court held:

8

>Damage to the prosecution's case would not have been confined to evidence of the eyewitnesses, for Beanie's various statements would have raised opportunities to attack not only the probative value of crucial physical evidence and the circumstances in which it was found, **but the thoroughness and even the good faith of the investigation as well**. (....) Beanie's statements to the police were replete with inconsistencies and would have allowed the jury to infer that Beanie was anxious to see Kyles arrested for Dye's murder. **Their disclosure would have revealed a remarkably uncritical attitude on the part of police.**
>(....)
>Even if Kyles's lawyer had followed the more conservative course of leaving Beanie off the stand, though, the defense could have examined the police to good effect on their knowledge of Beanie's statements and **so have attacked the reliability of the investigation in failing to even consider Beanie's possible guilt and in tolerating (if not countenancing) serious possibilities that incriminating evidence had been planted.** See, e.g. Bowen v. Maynard, 799 F.2d 593, 613 (10th Cir. 1986) ("**A common trial tactic of defense lawyers is to discredit the caliber of the investigation or the decision to charge the defendant, and we may consider such use in assessing a possible *Brady* violation**); *Lindsey v. King*, 769 F.2d 1034, 1042 (5th Cir. 1985) (awarding new trial ... because withheld *Brady* evidence "**carried within it the potential ... for the ... discrediting ... of the police methods employed in assembling the case**").
>(....)
>Since the police admittedly never treated Beanie as a suspect, the defense could thus have used his statements **to throw the reliability of the investigation into doubt and to sully the credibility of Detective Dillman, who testified that Beanie was never a suspect**...
>(....)
>The potential for damage from using Beanie's statement **to undermine the ostensible integrity of the investigation** is only confirmed by the prosecutor's admission ...
>(....)
>Beanie's same statement, indeed, could have been used **to cap an attack on the integrity of the investigation and on the reliability of Detective Dillmann** ...

*Kyles v. Whitley*, 514 U.S. at 445-49 (emphasis added).

The Court of Appeals for the Second Circuit has also taken an expansive view of a

9

defendant's right to cross-examine a witness for bias or a motive to testify falsely. See e.g. *United States v. Weiss*, 930 F.2d 185, 197 (2d Cir. 1991) ("The defendant should be given wide latitude in cross-examining a government witness in a criminal case. .... The Federal Rules of Evidence do not expressly deal with the concept of impeaching a witness for bias, but the Rules clearly contemplate impeachment of this nature. *United States v. Abel*, 469 U.S. 45, 49-51 [1984]"); *United States v. James*, 609 F.2d 36, 46 (2d Cir. 1979) ("However, 'bias of a witness is not a collateral issue and extrinsic evidence is admissible to prove that a witness has a motive to testify falsely.' *United States v. Harvey*, 547 F.2d 720, 722 [2d Cir. 1976]."); *United States v. Blackwood*, 456 F.2d 526, 530 (2d Cir. 1972) (Special treatment is accorded evidence which is probative of a motive to lie "for if believed it colors every bit of testimony given by the witness whose motives are bared."); *United States v. Masino*, 275 F.2d 129, 132 (2d Cir. 1960) ("When a witness in a criminal case is being questioned as to his possible motives for testifying falsely, wide latitude should be allowed in cross-examination."); *United States v. Lester*, 248 F.2d 329, 333-35 (2d Cir. 1957) ("Thus, facts may be shown from which it might be concluded that the witness favors the party for whom he has testified .... The rule [allowing extrinsic evidence to show bias] encompasses all facts and circumstances which, when tested by human experience, tend to show that a witness may shade his testimony for the purpose of helping to establish one side of the cause only."). It should be noted that the Court of Appeals reversed the convictions in *Harvey, Masino*, and *Lester*.

Turning to the facts of this case, the defense will **not** be raising the issues of jury

10

nullification, selective prosecution, or failure to use certain investigative techniques. We do, however, anticipate cross-examining law enforcement witnesses, *inter alia*, about whether they were motivated to "shade [their] testimony" to increase the pressure on defendant Romanello to become a cooperating witness for the government.

As stated previously, in July 2010, FBI Special Agents George Khouzami and Brian J. Driscoll went to Anthony Romanello's home and told him that he would be arrested on an old gambling charge if he did not become a cooperating witness for the government. Affidavit of Anthony Romanello, sworn to on March 11, 2011, ¶ 4, 10 Cr. 929 (ILG) (ECF No. 13). Mr. Romanello refused and the government followed through on the agents' promise by indicting defendant on "an old gambling charge" in December 2010. Under Supreme Court and Second Circuit precedent, inquiry about that threat is clearly permissible. In 2010, a court in this district ruled that a defendant was entitled to cross-examine law enforcement agents about a motive to falsify a post-arrest statement, despite the fact that a motion to suppress the statement had been denied.

> ...Morel argues that he should be permitted to show that any testimony regarding his admissible post-arrest statements is a fabrication or exaggeration of his true statements. ... To support this defense, Morel argues that he "must provide the jury with an explanation for what may have motivated the agents to fabricate, exaggerate, or embellish" the evidence, (citation omitted). .... As the Supreme Court explained in *Crane* [*v. Kentucky*, 476 U.S. 683 (1986)], "stripped of the power to describe to the jury the circumstances that prompted his confession, the defendant is effectively disabled from answering the one question every rational juror needs answered: If the defendant is innocent, why did he previously admit his guilt?" *Crane*, 476 U.S. at 689. Without the ability to present evidence regarding the circumstances under which his admissible statements were made and thereby attack the credibility of the agents who are likely to testify about those statements, Morel would be denied

11

his right to have a meaningful opportunity to present a **complete** defense. See id. at 690 (finding that "the blanket exclusion of the proffered testimony about the circumstances of [the defendant's] confession deprived him of a fair trial").

United States v. Morel, 751 F. Supp. 2d 423, 429-430 (E.D.N.Y. 2010) (emphasis in original).

In this case, the defense has a Sixth Amendment right to present evidence that the government had a long-standing and continuing bias against Mr. Romanello because of his refusal to cooperate in the government's quest to prosecute Anthony Federici. That constitutional right should not be denied at his trial.

## CONCLUSION

The government's motions *in limine* should be denied except as consented to herein.

Dated: Scotch Plains, New Jersey
October 16, 2023

*[signature: Gerald J. McMahon]*

Gerald J. McMahon, Esq.
*Attorney for Defendant Anthony Romanello*
11 Burnham Court
Scotch Plains, New Jersey 07076
908.347.4670
gm@geraldjmcmahon.com (email)

To: All Counsel
(by ECF)